IRVING, P.J.,
dissenting:
¶ 17. The majority finds that the chancellor did not err in refusing to terminate William’s separate-maintenance obligations after William and Stella were divorced. Because an existing marriage is a prerequisite for sustainment of an award of separate maintenance, I dissent.
¶ 18. . In August 2013, the District Court of El Paso County, Texas, awarded William and Stella a divorce. The record does not inform us if Stella requested alimony at that, time, but it reveals that no alimony was awarded. The judgment of divorce *807 contains two provisions that warrant analysis:
The [cjourt finds that the parties have, entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The [cjourt approves the agreement of the parties as contained in this [fjinal [dje-cree of [djivorce.
The [cjourt finds that the parties entered into adjudgment for [sjeparate [mjaintenance on or about September 1, 2006[,J in the Chancery Court of Rankin County, Mississippi,] in case' number 57913 and attached as Exhibit A to this [djecree. It is not the intent or purpose of this decree, nor shall it be construed or interpreted to alter, change, ■ limit, diminish, or cancel any provision of said judgment. - This [djecree is being entered separate and apart from that judgment.
¶ 19. On November 13, 2013, a little over two months after the judgment of divorce, William filed a complaint in the Chancery Court of Rankin County, seeking to terminate the separate maintenance that the chancery court had awarded to Stella in September 2006. Stella answered William’s complaint and filed a countér-claim, seeking to have William held in contempt for failing, since December 2013, to abide by the terms and conditions of the order for separate maintenance. Specifically, Stella contended that William had not provided health insurance for her as required by the separate-maintenance order.
¶ 20. When the matter came on for hearing before the chancery court, ;.the chancellor determined that William should not be held in contempt because he had attempted to acquire health insurance for Stella. However, the chancellor denied William’s request for termination of his separate-maintenance obligations and dismissed his complaint. In doing so, the chancellor stated: “[TJhis [cjourt will fully enforce all terms of the [¡Judgment for [sjeparate [mjaintenance entered in this cause and incorporated in the [fjinal [dje-cree of [djivorce entered in the [Texas courtj.”
¶21. Our law is well settled that an existing marriage is a prerequisite to an award of separate maintenance. See Weiss v. Weiss, 579 So.2d 539, 541 (Miss.1991). In Weiss,
Barbara and Thomas Weiss were married on December 16, 1967, in Biloxi, Mississippi. They separated in 1986, and Thomas moved to Slidell, Louisiana. Barbara continued to reside in Mississippi. In November 1988[,J Thomas filed a suit for divorce in Louisiana. In December of that same year, Barbara filed a complaint for separate maintenance in Mississippi.
Id. In deciding that the chancery court’s award of alimony was proper despite the fact that Barbara had filed only a complaint for separate maintenance, the Weiss court stated:
Barbara’s original complaint was for separate' maintenance; and she did not formally amend her complaint. Her claim, for separate maintenance %oas no longer proper, however, as a divorce had been previously granted. The lower court’s judgment of alimony may still be affirmed if her action for separate maintenance could be and was properly converted to, and tried as, a claim for alimony-
There is nothing inherent in the substance of a claim for separate maintenance to prevent parties from implicitly *808 or tacitly amending the complaint at trial to become a claim for alimony.
Id. (emphasis added).
¶ 22. The major distinction between our case and Weiss is that, here, unlike what occurred in Weiss, the parties did not try, by consent, the issue of alimony, nor did Stella convert her claim for separate maintenance into one for alimony. As stated, Stella sought to have William held in contempt for his failure to abide by the separate-maintenance order, even though the parties were divorced. I should note that Stella did not question the validity of the Texas District Court’s judgment of divorce in the chancery court, and even if she had, she would not have prevailed on that issue, as it is not subject to collateral attack. Moreover, she agreed to both the form and substance of the Texas court’s judgment.
¶ 23. Based on these facts, it is clear to me that the majority errs in affirming the chancery court’s judgment upholding the continuing validity of the separate-maintenance order despite the existence of the valid judgment of divorce by the Texas court. Also, it is clear to me that the chancellor, as well as the majority, misreads the Texas [cjourt’s judgment as incorporating the separate-maintenance order. Quite the contrary, the Texas court’s judgment simply acknowledges the existence of the separate-maintenance order and specifically states: “It is not the purpose of this [judgment], nor shall it be construed or interpreted to alter, change, limit, diminish, or cancel any provisions of said judgment.” Despite the plain and unambiguous wording in the Texas court’s judgment, leaving the separate maintenance unaffected, the chancellor and the majority must either read the judgment as automatically converting the separate maintenance into alimony, or misinterpret Mississippi law as automatically allowing separate maintenance’ in lieu of alimony if there is an outstanding order for separate maintenance at the time a judgment of divorce is granted. In my judgment, Mississippi law does not allow such. I acknowledge that Stella would have been acting within the parameters of our law if she had sought to convert, by the appropriate pleading, her separate-maintenance claim into one for alimony. Also, the parties could have voluntarily tried the issue of alimony even though no pleadings on the issue existed. However, in either case, Stella would have been required to prove that alimony was appropriate. That was not done, hence the error.
¶ 24. I should point out that the majority’s reliance upon Chapel v. Chapel, 876 So.2d 290 (Miss.2004) is misplaced because Chapel, while factually similar to our case in some ways, is factually dissimilar in a crucial and material aspect: the absence of consent by William, or a request by Stella for the chancery court to decide the issue of alimony or to treat the existing separate maintenance as alimony. In Chapel, one of the issues was whether the Virginia judgment of divorce removed subject-matter jurisdiction from a Mississippi court that had previously granted separate maintenance, thereby precluding a subsequent modification of the order for separate maintenance. Chapel, 876 So.2d at 293 (¶ 10). In order to put the issue in Chapel in factual context vis-a-vis the facts in our case, I quote extensively from the Chapel court’s opinion in resolving the issue presented:
However, given that neither party in the present case made formal objections to the chancellor’s authority to modify the original separate[-]maintenance judgment after the Virginia divorce was granted, it is not necessary for the [c]ourt to reach the issue of whether a divorce decree, particularly a foreign di *809 vorce decree, terminates a domestic court’s order of separate maintenance.
[[Image here]]
In the present case, the chancellor entered the original separate[-]maintenance judgment on May 31,1996. Virginia entered the final divorce decree on April 25, 1997. The chancellor entered judgments modifying the original judgment on August 7, 1998[,] and January 9, 2001[,] at the petition of Grace and Michael. Similar to Landrum [v. Landrum, 498 So.2d 1229 (Miss.1986) ], the chancellor modified the judgment at the request of the parties and subsequent to the entr[y] of the divorce. The entry of the divorce decree did not terminate the chancellor’s authority to modify the existing judgment!,] which provided for support for Grace and the two children, possession of the marital home [,] and custody of the children. Once petitioned by the parties, the divorce qualified as a material change in circumstances subsequent to the original judgment, which vested the chancellor with the authority to modify it.
[[Image here]]
Similar to the parties in Weiss, Grace and Michael manifested their consent to the chancellor’s modification of the original judgment and division of the marital property on numerous occasions during the years covered in this appeal. There was no surprise or prejudice occasioned as a result of the judge’s decision to grant the agreed request of the parties. Although the parties’ pleadings %oere for the contempt of the original judgment, the parties consented to the chancellor’s authority to modify and decide issues not resolved by the Virginia divorce, including division of the marital property.
Based on the [c]ourt’s holdings in Land-rum and Weiss, we conclude that the chancellor had authority to modify the original separate-maintenance agreement subsequent to the Virginia divorce, based on a subsequent material and substantial change in circumstances. The consent of the parties gave the chancellor the authority and jurisdiction to adjudicate issues relating to division of the marital property, without requiring the parties to amend their pleadings.
The foreign divorce decree did not terminate the Mississippi chancery court’s jurisdiction over the matter, nor were the parties required to file a separate pleading for alimony or division of property once the parties consented to the chancellor’s authority to rule on such matters. We affirm the chancellor’s modification of the separate[-]maintenance judgment and denial of Grace’s motion for relief from judgment.
Chapel, 876 So.2d at 294-95 (¶¶ 11, 13, 18-20) (emphasis added).
¶ 25. Clearly, the facts in Chapel are totally different'from our facts, making the legal conclusions stated therein inapplicable to our case. Here, Stella’s counterclaim placed only one issue before the chancery court: whether William was in contempt for his failure to abide by the order for separate maintenance. William’s complaint also placed only one issue before the court: whether his obligations under the separate-maintenance order should be terminated because a material change in circumstances had occurred — the marriage between him and Stella had been dissolved since the date of the order for separate maintenance. The parties did not stipulate that the court could consider whether the separate maintenance should be continued as alimony and did not try that issue. Since Stella, in her counterclaim, did not ask that she be granted alimony or that the separate maintenance be convert *810 ed to or treated as alimony, the issue of converting or treating Stella’s separate maintenance as alimony was not’before the chancery court. It necessarily follows that there was no basis for the chancellor to keep the order for separate maintenance in place after the judgment of divorce. Citing Landrum, 498 So.2d at 1230, the majority states: “A divorce can be a material change in circumstances warranting modification of a prior separate maintenance order.” In my view, a judgment of divorce is a material change in circumstances,- for it cannot be legitimately argued that the dissolution of the marriage— the premier legal relationship between the parties upon which separate maintenance hangs — is not a material and substantial change.' ;
¶ 26. In William’s complaint, he stated: “A material change in circumstances, has occurred which warrants termination of the separate[-]maintenance judgment^] to wit: The parties were divorced on August 28, 2013.” When Stella was served with a copy of William’s complaint, it became her obligation to counterclaim for alimony if she felt entitled to it. She did not, choosing instead to seek to have William held in contempt for failure to honor all of his obligations under the existing separate-maintenance agreement. She could have done both, but her failure to counterclaim for alimony did not preclude the chancery court from considering and deciding the issue presented by William. Indeed the chancery court was obligated .to do so.
¶27. I would reverse and render the judgment of the chancery court. In doing so, I offer no opinion as to whether Stella may still seek alimony by an appropriate pleading. I simply find that since she did not seek alimony at the time that William sought to have his separate-maintenance obligations terminated, the chancery court erred in not terminating William’s separate-maintenance obligations because .the undisputed evidence is that the parties were no longer married. The majority’s suggestion that, notwithstanding Stella’s failure to expressly petition for alimony, the chancellor could sua sponte re-characterize the separate maintenance as alimony is without legal footing.
¶28. Therefore, for the reasons presented, I dissent.
CARLTON AND WILSON, JJ., JOIN THIS OPINION.